after if proof is given, to proceed in accordance with the procedures set forth in ASH § 241. We do not retain jurisdiction.

**STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ALBERT M. MOORE, DEFENDANT-APPELLANT.**

Superior Court of New Jersey
Appellate Division

Argued December 7, 1976—Decided February 9, 1977.

492

Before Judges MATTHEWS, SEIDMAN and HORN.

*Mr. John H. Ratliff*, designated counsel, argued the cause for appellant (*Mr. Stanley C. Van Ness*, Public Defender, attorney).

*Mr. John P. Goceljak*, Assistant Prosecutor, argued the cause for respondent (*Mr. Burrell Ives Humphreys*, Passaic County Prosecutor, attorney).

PER CURIAM. This is an appeal by defendant from a judgment of conviction entered on August 20, 1975 for atrocious assault and battery (*N. J. S. A.* 2A:90–1) and threat to kill (*N. J. S. A.* 2A:113–8).

On February 6, 1967 defendant was charged with the rape of a 13-year-old female (*N. J. S. A.* 2A:138–1). On or about the date of that alleged crime, January 11, 1967, defendant left the State and was subsequently arrested in Richmond, Virginia, on a charge of breaking and entering. On June 8, 1967 a Passaic County indictment was returned against defendant charging him with carnal abuse.

Subsequently, defendant was convicted of burglary in Virginia and sentenced to serve a five-year term. On August 3, 1967 a detainer was filed by New Jersey authorities in Virginia. Defendant did not learn of the New Jersey indictment or detainer until he appeared before the Virginia Parole Board in December 1968. On gaining that knowledge he wrote a letter, dated December 7, 1968, to the Passaic County Prosecutor requesting that he be given a speedy trial or that the indictment be dismissed. On January 9, 1969, defendant wrote to the Passaic County Court requesting a

speedy trial. This request was communicated to the assignment judge who, on January 30, 1969, wrote to the prosecutor emphasizing that should he fail to bring defendant to trial "as soon as possible" there might be a dismissal of the indictment.

When the prosecutor undertook to extradite defendant from Virginia, the Virginia authorities advised him that extradition was not necessary since under Virginia law defendant could be returned under a much simpler process. However, this procedure was never implemented, apparently because the assistant prosecutor handling the case had left the office. On April 16, 1969 defendant wrote again to the Passaic County Prosecutor stating that in view of the fact that he had not been given a speedy trial, the charges against him should be dropped.

After defendant had served his sentence in Virginia, he was returned to Passaic County on July 16, 1970 for trial. He then moved to dismiss the indictment, and on September 25, 1970 the assignment judge concluded that defendant had been denied a speedy trial; accordingly, the indictment was dismissed. Defendant was then released from custody and no further prosecutorial action was taken until July 20, 1971 when three new indictments were returned (all based upon the incident of January 11, 1967), charging him with (1) atrocious assault and battery *(N. J. S. A.* 2A:90–1); (2) threat to kill *(N. J. S. A.* 2A:113–8) and (3) impairing the morals of a child *(N. J. S. A.* 2A:96–3).

On defendant's motion the trial judge dismissed all three indictments on the ground that defendant had been denied a speedy trial. His rationale, in essence, was that since it had been previously ruled that there was substantial prejudice to defendant three years and seven months after the event, a trial on new charges arising out of the same incident some 4½ years later would be similarly prejudicial.

In an unreported *per curiam* opinion, decided November 30, 1972, another part of this court affirmed so much of the trial judge's order which dismissed the indictment for im-

pairing the morals of a child on the ground of double jeopardy but reversed as to the other indictments, finding that (1) they charged defendant with crimes different from those previously returned, and (2) the trial judge improperly found that the "delay, without more," was adequate to establish that defendant had been prejudiced. The court emphasized:

In short, possible prejudice to the accused is not the test. There must be a showing that the pre-indictment delay caused "actual prejudice to the conduct of the defense * * * and * * * that the Government intentionally delayed to gain some tactical advantage over * * * or to harass" the accused. *United States v. Marion*, 404 *U. S.* 307, 325, 92 *S. Ct.* 455, 30 *L. Ed.* 2d 468 (1971) ; * * *.

Accordingly, finding that the record below contained no evidence of actual prejudice to defendant, or that the State had used the delay to gain a tactical advantage, the court reinstated the latter two indictments.

On January 2, 1973 defendant returned to jail. Certification was denied by the New Jersey Supreme Court on January 18, 1973. Subsequently, on defendant's motion, an evidentiary hearing was held in March 1973 in which the trial judge determined that "defendant ha[d] failed to show the prejudice that * * * is required under *Barker v. Wingo* [407 *U. S.* 514 (92 *S. Ct.* 2182, 33 *L. Ed.* 2d 101) (1972) ], and specifically called for by our Appellate Division." He was of the opinion that this court had covered the first three points of the test outlined in *Barker v. Wingo,* cited above, in that (1) the record disclosed a delay of 4½ years between the alleged offense and the return of the indictment; (2) the prosecutor had been unable to justify his actions regarding the delay, and (3) defendant had asserted his right to a speedy trial on several occasions. However, with respect to the fourth factor, he found that defendant could not have been prejudiced in not being able to locate witnesses since his attempts to do so were totally inadequate.

Applications for leave to appeal to the Appellate Division and our Supreme Court were subsequently denied, and on

June 19, 1973 defendant applied to the United States District Court for the District of New Jersey for *habeas corpus* relief and for an order staying the trial until resolution of the petition.

The District Court found that defendant had been denied a speedy trial as guaranteed by the Sixth Amendment and accordingly granted defendant's petition dismissing the pending indictments. *Moore v. De Young*, 391 *F. Supp.* 111, 123 (D. N. J. 1974). Applying the test outlined in *Barker v. Wingo*, above, the court found that (1) the trial was delayed for approximately four years, from August 8, 1967 (the date on which the detainer was filed) to July 20, 1971 (the date on which the outstanding indictments were returned), 391 *F. Supp.* at 122–23; (2) this delay was the result of the State's inaction:

\* \* \* The obvious inference [being] \* \* \* that the outstanding indictments constitute an effort by the prosecution to do by indirection that which it could not do directly once [the prior] indictment had been dismissed and the time for appeal \* \* \* had \* \* \* expired. [at 119]

(3) defendant had asserted his right to a speedy trial on several occasions, *Id.* at 123, and (4) defendant had been prejudiced by the delay since (a) he had been confined in New Jersey for two years, eleven months between June 30, 1970 and June 1, 1973, (b) had experienced anxiety and concern as evidenced by his repeated requests for a speedy trial, and (c) there had been a "loss of real evidence" making it impossible to analyze the stains found on defendant's clothes and those on the mattress, the latter of which was subsequently lost. *Moore v. De Young*, above, *Id.* at 122.

The District Court judge concluded that by focusing upon whether there had been actual prejudice to defendant, the state court incorrectly interpreted and applied this standard in *Barker* where the Supreme Court had " 'expressly rejected the notion that an affirmative demonstration of prejudice was necessary,' " favoring a balancing of four factors (length

of delay, reason for delay, defendant's assertion of his right and prejudice to defendant). *Moore v. De Young,* above, 391 *F. Supp.* at 116, 122, quoting from *Moore v. Arizona,* 414 *U. S.* 25, 26, 94 *S. Ct.* 188, 38 *L. Ed.* 2d 183 (1973).

The United States Court of Appeals for the Third Circuit reversed, concluding that defendant had not exhausted his state remedies prior to applying for federal *habeas corpus* relief. Accordingly, the court ordered the petition dismissed and vacated the stay against the state prosecution. However, the court expressed no opinion on the substantive issue of defendant's claim of denial of speedy trial. *Moore v. De Young,* 515 *F.* 2d 437, 449 (3 Cir. 1975).

The matter was then set down for trial in Passaic County Court. Defendant's motion to dismiss the indictments on the grounds of denial of speedy trial and for failure to join all offenses in the original indictment was denied. A motion for leave to appeal that denial was also denied by this court.

After a jury trial defendant was found guilty of both charges and was thereafter sentenced to State Prison for a term of 10 to 12 years on the conviction for threat to kill and to a concurrent term of 3 to 5 years for atrocious assault and battery. This appeal followed.

We refer briefly to the facts surrounding the alleged incident. The victim, who was 21 years old at the time of the trial (13 at the time of the offense), testified that she and a classmate, Ricky Scheller, were leaving a candy store and walking down the street when she noticed a man across the street "staggering," who thereafter "yelled something to us." As the man approached the two "started to run because we were scared." The victim identified her pursuer as defendant and pointed him out in court.

Defendant pursued the victim until he had her by the neck and dragged her across the street where they were met by young Scheller, who was unsuccessful in his attempt to force defendant to release her. Further along, Scheller ran across the street to get help. Eventually, when defendant and the victim reached North 3rd Street, she claimed he dragged her

into a cellar that was lit with a light bulb and contained a mattress on the floor where she was sexually assaulted and also hit in the eye. Immediately upon her release she ran home and told her mother, who summoned police.

Scheller testified that on the night in question he was 15 years old. He also identified defendant as the man he had seen pursuing and later dragging the victim away.

Although he raises several issues respecting the trial, the main thrust of defendant's appeal is that he was denied his constitutional right to a speedy trial, and that a prior ruling of this court that these indictments were not precluded should be reconsidered and the indictments dismissed.

■ ■ The alleged trial errors can be disposed of summarily. Defendant launches an attack upon the use of prior convictions to impeach credibility. Apart from the fact that his issue comes to us as plain error, the use of such prior convictions is permitted both by statute and rule, as defendant freely acknowledges. *State v. Hawthorne,* 49 *N. J.* 130 (1967). As an intermediate appellate court we are not privileged to disregard it. We note, however, that the issue is again before our Supreme Court, certification having been granted (71 *N. J.* 345) in *State v. Sands,* 138 *N. J. Super.* 103 (App. Div. 1975).

■ Defendant also asserts that he was prejudiced by a rhetorical question put by the prosecutor during summation as to where defendant had been for eight years. We do not agree. Defendant did not object at the time, but waited until the summation was concluded and the jury excused for the day before moving for a mistrial. The trial judge included a strong curative instruction in his charge to the jury. We believe that whatever harm may have been caused by the remark was clearly dissipated. The further argument that the comment infringed on defendant's right to a speedy trial is without merit.

■ Turning to the speedy trial argument, a good deal depends on what *Barker v. Wingo,* 407 *U. S.* 514, 92 *S. Ct.* 2182, 33 *L. Ed.* 2d 101 (1972), actually holds, because to

the extent that the earlier opinion of this court may not be in accord, we are bound by *Barker*. It is now clear that the approach to be used is a balancing test in which conduct of both the prosecution and the defendant is weighed, and each case is to be considered on an *ad hoc* basis. Four factors are identified: (1) the length of delay, which is dependent upon the circumstances of the case; (2) the reasons assigned by the government to justify the delay; (3) defendant's responsibility to assert his right, and (4) prejudice to defendant in (a) oppressive pretrial incarceration, (b) anxiety and concern and (c) impairment of the defense.

Only the element of actual prejudice seems to have played any significant part in these proceedings. Yet, there is no doubt that the State has never satisfactorily explained the lengthy delay which produced the dismissal of the carnal abuse indictment, and, more importantly, why the charges contained in the new indictments could not have been included in the original indictment. It is obvious, of course, that the State was making a determined effort to salvage something out of the situation for which it was largely to blame. Equally without doubt is the fact that defendant diligently sought to assert his right to a' speedy trial. Finally, of course, there is the issue of prejudice.

■ ■ We express, at the outset, an inability to comprehend the reasoning which produced a dismissal of the carnal abuse charge because of lack of a speedy trial, and yet permitted subsequent charges for alleged offenses arising out of the same incident to stand. We also note that a showing of actual prejudice, which was the foundation of the earlier opinion of this court as well as that of the trial judge, is not the test in proving the denial of the constitutional right to a speedy trial. *Moore v. Arizona,* 414 *U. S.* 25, 94 *S. Ct.* 188, 38 *L. Ed.* 2d 183 (1973). It is apparent from a study of the history of these proceedings that at no time during the long history of this case (other than in the federal courts) was there ever a consideration of all the factors laid down in *Barker v. Wingo.* While we cannot conclude from the

record that the defense was so impaired as to prevent a fair trial, applying the balancing tests of *Barker v. Wingo*, the other three factors clearly favor defendant.

We are satisfied that under considerations of fairness in the constitutional sense, the convictions cannot be sustained and that the charges should be dismissed. Unquestionably, the prosecutor was aware of all of the circumstances surrounding the original offense. He sought and received an indictment arising out of the conduct claimed to have been perpetrated by defendant. Because of a mixup and lack of organization in the prosecutor's office, the charge was not brought to trial within a period reasonable by constitutional standards. Consequently, defendant was permitted to go free of the charge. To permit the prosecutor now to pull his proverbial chestnuts out of the fire by bringing these late indictments would, in our judgment, bring about a travesty of justice. While we realize that to the uninformed this operation of constitutional law may seem to be a travesty of justice as far as the victim is concerned, the foregoing, with respect to the conduct of the prosecutors in carrying out their functions is of greater concern to us as a reviewing court so as to assure the safeguarding of constitutional rights.

The principle upon which we choose to reverse here today is nothing new to judicial precedent. It has most recently been espoused in *State v. Gregory*, 66 *N. J.* 510 (1975), where Justice Jacobs, speaking for the court, stated:

The Prosecutor was fully aware of all of the pertinent circumstances before the first indictment was returned. He had broad discretionary powers (*In re Investigation Regarding Ringwood Fact Finding Comm.*, 65 *N. J.* 512, 516 (1974)) and in the exercise of his discretion he could have sought indictment for (1) the sale or (2) the possession with intent to distribute, or both. He sought and obtained indictment only for the sale and not until after trial thereon was completed did he seek and obtain indictment for the possession with intent to distribute. This course was patently unfair to the defendant and was in clear conflict with the goals and terms of § 1.07 (2) [of the Model Penal Code]. While that section was not then in effect we consider it only just and proper that the defendant here be given its full benefits; and of course he should not be procedurally

barred because of his failure to make appropriate objection before trial. See *State v. Bell, supra,* 55 *N. J.* at 248; *cf. State v. Currie, supra,* 41 *N. J.* [531] at 535; *City of Newark v. Pulverman,* 12 *N. J.* 105, 108 (1953). * * * [at 523]

The judgments of conviction are reversed and the indictments charging defendant with the crimes of atrocious assault and battery and threat to kill are dismissed.