183 N.J. Super. 172 (1982)
443 A.2d 738
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
CHRISTOPHER JONES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 1, 1981.
Decided February 17, 1982.
*174 Before Judges FRITZ, ARD and TRAUTWEIN.
Lawrence Magid, Assistant Prosecutor, Gloucester County, argued the cause for appellant.
John M. Apicella, Assistant Deputy Public Defender, argued the cause for respondent (Stanley C. Van Ness, Public Defender, attorney).
John J. Degnan, former Attorney General of New Jersey, filed a brief and appendix amicus curiae (James R. Zazzali, Attorney General of New Jersey, attorney; Debra L. Stone, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Defendant secured the dismissal of an indictment charging him with carnal abuse, without objection by the State, on the *175 ground that that particular offense had been abrogated by N.J.S.A. 2C:1-1 et seq., the New Jersey Code of Criminal Justice (hereafter the new Criminal Code, or the Code). The State presented the same facts to a grand jury which returned an indictment for rape. This was dismissed by the trial judge on defendant's motion and over the objection of the State. The State appeals. We reverse.
The foregoing procedural facts are not the matter of any dispute. While neither of the parties has seen fit to provide the court with the grand jury testimony,[1] the comments of the trial judge, who read the transcripts of both presentations to the grand jury, on the motion to dismiss the superseding indictment, together with recourse to the indictment, reveal the nature of the allegations respecting the substantive charges. The victim was a 15-year-old female. After there was "slapping around and putting the girl in fear and force ... two guys," who were companions of Jones and codefendants, raped the girl. According to the understanding of the trial judge reported in the motion transcript, "Chris Jones eventually [had] relations with her also."
The State first secured an indictment charging carnal abuse, contrary to the provisions of N.J.S.A. 2A:138-1.[2] Although the *176 prosecutor does not tell us the date on which the indictment was filed in the appendix to his brief where the indictment is reproduced (see R. 2:6-1(b)), he avers in his procedural history that it was on December 20, 1978 and, in any event, obviously prior to September 1, 1979, the effective date of N.J.S.A. 2C.[3] The matter had not been tried by September 1, 1979 and, accordingly, on November 20, 1979 defendant moved to dismiss the indictment on the basis that carnal abuse was no longer a crime under the new Criminal Code and N.J.S.A. 2C:1-1 c(3) required a dismissal. It would also appear that by April 22, 1980 this motion had not yet been heard. On that date the prosecutor forwarded the following letter to the trial court:
Please accept this letter/memorandum as my office's response to the defense motion to dismiss the above Indictment pursuant to N.J.S. 2C:1-1(c)(3).
As I discussed both with you and with Norman Muhlbaier, Esquire, attorney for the defendant, recently my office will not oppose the motion to dismiss. The argument made by defense counsel has considerable merit in light of the fact that although the investigation indicates force was used in the sexual assault, no force was alleged in the Indictment. We feel certain that we will be able to re-indict for forcible rape.

I have been in touch with the Cumberland County Prosecutor's Office. They will be informing me shortly if they wish to consolidate their complaints with the Gloucester County complaints for the purpose of re-indictment.
In light of this position, I will not be submitting a formal brief.
Thank you for your kind attention to this matter. [Emphasis supplied]
*177 The superseding indictment was returned by the grand jury on May 15, 1980.[4] It is not clear whether there was argument on the motion to dismiss the first indictment  we doubt it in view of the State's announced lack of objection  but, in any event, that indictment was not dismissed until May 27, 1980, 12 days after the superseding indictment had been returned. In this posture of things, we have no statement appearing in the record respecting whether the trial judge dismissed the first indictment because of the mandate of N.J.S.A. 2C:1-1 c(3) or because it had been superseded by the second indictment. That particular void is not of any real significance; either reason would have justified the dismissal. We do express our surprise and concern for the delay in trying the first indictment and, thereafter, for the delay in disposing of the motion filed November 20, 1979.
Defendant then moved on July 24, 1980 to dismiss the superseding indictment on essentially the same grounds which he here utilizes to defend against this appeal. The prosecutor resisted this motion. After specifically finding that there was no "prosecutorial vindictiveness" in the reindictment, the trial judge nevertheless granted defendant's motion to dismiss on the ground that to permit a reindictment based on the same circumstances would have a chilling effect on the right of the defendant to seek a dismissal under N.J.S.A. 2C:1-1 c(3). He said:
.... But I think the real issue comes down to Judge Green's Appellate Decision. [United States v. Andrews, 612 F.2d 235 (6 Cir.1980).[5]] This was not meant to place a shield on a defendant's exercise to exercise his right. And this particular instance is the same as far as this Court is concerned, as somebody *178 exercising the right of appeal. To face that greater punishment would shield them from exercising that right.
In this particular case the legislation by the enactment of 2C said this man had a right not to be charged with that particular offense because there no longer is one. He, by exercising  well, really, the legislature has now placed him in the jeopardy of a much more serious offense. I don't disagree with the prosecution for taking it back, but I cannot and will not in the constitutional basis of casting a shield upon a man's right to exercise his right, permit it to happen in this particular case under these particular facts. And I do find that the Indictment for the more serious offense of rape has done away with this man's right to broach the subject of whether or not there is a crime under the charge that he's before.
It is clear, therefore, that the trial judge decided this motion solely on a due process issue.
We have been referred to no New Jersey law which, without more, prohibits the seeking of a second indictment following the dismissal or quashing of the first indictment prior to, at the very least, the empaneling of a jury to try the indictment. Our independent research has revealed no such injunction. In fact, the law appears to be and, in our opinion, should be, to the contrary, at least until the Legislature directs otherwise. State v. Rosen, 52 N.J. Super. 210, 213 (Law Div. 1958).
On the other hand, four appropriate concerns may intervene to deprive the law enforcement authorities of this right to seek reindictment. Obviously, if the circumstances were such that a sound double jeopardy argument could be made, this constitutional consideration would prevent reindictment. Second, collateral estoppel might intrude. Third, there is no doubt at all that the Legislature can forbid reindictment by the promulgation of statutory prohibitions. Finally, considerations of fair play, characterized constitutionally as due process, might well in a given situation abrogate the right to reindict. We are persuaded that in the circumstances before us none of these concerns warrants judicial interference with the ordinary law enforcement process.
Double jeopardy problems do not present themselves simply because defendant has never been "in jeopardy." While an earlier and more simplistic formula for the determination of double jeopardy matters was traditionally stated in terms of *179 jeopardy finally attaching at the moment the jury had been empaneled and sworn, State v. Locklear, 16 N.J. 232 (1954), more recently the doctrine has been examined and applied "in terms of the evil against which it was designed to forfend and less as a matter of slavish adherence to ritualistic formula." State v. Laganella, 144 N.J. Super. 268, 287 (App.Div. 1976), app. dism. 74 N.J. 256 (1976). No matter how the rule is stated, neither we nor the judge in the trial court nor, apparently, the parties find circumstances from which it might be argued that defendant was at any time in jeopardy. We find nowhere in the circumstances of this case the proscribed evil of defendant's having been put to such a task of defending himself that, even absent a prior conviction or acquittal, he should now be relieved of further efforts by virtue of our desire "to shield the freeman from the oppressions and persecutions of arbitrary government." State v. Labato, 7 N.J. 137, 144 (1951). For now, that is enough. We further consider defendant's allegations of unfairness in that which we have to say below respecting due process.
It is equally clear that considerations of collateral estoppel present no bar. Simply put, no determination has been undertaken respecting any issue on its merits. In such circumstances, it cannot be said that the prior determination of an issue now concludes a subsequent relitigation. Compare N.J.S.A. 2C:1-10 b. Defendant's assertion of this subsection in his favor is frustrated by the obvious fact that the "termination" in connection with the first indictment cannot in anywise be said to have "necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense." The fact of the matter is that all it required was a determination that that which was charged in the first indictment was no longer a crime under the new Criminal Code.
Nor do we perceive any statutory prohibition against the reindictment. Defendant charges that N.J.S.A. 2C:1-1 c(3) prohibits generally any further prosecution of that which constituted a crime under the prior criminal statutes but not under the new Criminal Code. We believe that the argument is sophistry, *180 contrives a parochial and unrealistic view of the legislative intent of N.J.S.A. 2C:1-1 c(3) and begs the question. Clearly, the plain meaning of the words used by the Legislature is that there should be no further prosecution of conduct which once constituted proscribed criminal conduct but does no longer, and this without any regard at all for a name which may have become attached to one crime or another over the years. It is the conduct that must be searched to find whether it is proscribed under the Code and only if it is not, that is subject to the no-more-prosecution injunction of N.J.S.A. 2C:1-1 c(3). Conversely, even though such conduct may not be the subject of a precise proscription thought to be "congruent" with an N.J.S.A. 2A offense, if it is criminal conduct under the Code, as it was under N.J.S.A. 2A, there is no statutory prohibition at all against its prosecution. Sexual activity of the nature allegedly engaged in by defendant constitutes such conduct. To say, as does defendant here, that "[t]he dismissal of the first indictment charging carnal abuse pursuant to N.J.S.A. 2C:1-1(c)(3) was a dismissal on the merits barring reprosecution by the State," compounds the far reach: not a single word has been uttered in a courtroom yet respecting the merits. It is inconceivable to us that the Legislature meant, by the statute in question, to create such a fiction.
Defendant also asserts that N.J.S.A. 2C:1-9 b prohibits a reindictment. Without concerning ourselves with the import of that statute, we observe that the final sentence of that subsection specifically provides for its inapplicability "to an order or judgment quashing an indictment prior to trial," as here.
Defendant also relies on N.J.S.A. 2C:1-9 d(3). Suffice it to say that we do not regard the dismissal of an indictment under a previous statute because that particular crime was abolished as an "improper termination" within the meaning of N.J.S.A. 2C:1-9. The section cited by defendant would seem to support our view. Subsection (3) holds, as not improper, a termination "required by a sufficient legal reason and a manifest or absolute or overriding necessity." These characterizations clearly describe *181 the purpose of the dismissal of the first indictment here, where the crime was abolished.
With regard to all the statutes relied upon by defendant, we would observe that our overview of the new Criminal Code in these procedural respects convinces us that clearly it was not the intent of the Legislature to insulate criminal conduct from prosecution simply because there was a refashioning of the description of proscribed activity or a determining that some less activity should no longer be a crime. See State v. Jordan, 177 N.J. Super. 430 (App.Div. 1981).
Lastly, we turn to due process considerations. In this regard we look first at that upon which the judge depended for his determination. He was of the opinion that to permit reindictment would have a chilling effect on defendant's "exercise [of] his right." We would ask: what right? The only "right" we see in the circumstances is the right not to be prosecuted for a nonoffense. The right of the individual defendant in such case inheres regardless of action by him.[6] This is not akin to the assertion of rights accruing under the First, Fourth, Fifth or Sixth Amendments to the Constitution of the United States. Rather, the right here is self-executing. A defendant may not be prosecuted for an "offense" which is not a crime. In any event, our conclusion is that the "right" involved is not of a nature that may be subjected to "chilling." Defendant may not avail himself of the fortuity of a statutory revision to free himself from the legal consequences of activity which remains criminal despite the change.
It is not without substantial significance that the trial judge expressly found an absence of "prosecutorial vindictiveness." Not only might this finding have been reached upon sufficient credible evidence in the whole record, whereby we will not intrude, State v. Johnson, 42 N.J. 146 (1964), but we believe such *182 a finding is almost inescapable. We detect no signs whatsoever of reprisal or any other unfairness. As a matter of fact, the trial judge commented on his own belief in this regard when he said, "I don't think there's anything wrong in the Prosecutor in attempting to serve justice." Such a finding overcomes the presumption imposed on a reindictment increasing the severity of charges. State v. Buckrham, 167 N.J. Super. 455 (Law Div. 1979), findings supplemented without published opinion on remand from Appellate Division, and subsequently remanded for further proceedings on the basis of the affirmed supplemental findings, 173 N.J. Super. 87 (App.Div. 1980). We are satisfied as well that the intervening statutory change is sufficient to dispel even the appearance of vindictiveness. Certainly there was no "realistic likelihood of vindictiveness." U.S. v. Andrews, supra, 633 F.2d at 457.
This fact of absence of unseemly or untoward conduct or motivation on the part of the prosecutor serves to distinguish the due process cases cited by defendant. In State v. Moore, 147 N.J. Super. 490, 499 (App.Div. 1977), certif. den. 74 N.J. 272 (1977), "a mixup and lack of organization in the prosecutor's office" produced the reindictment. The court was there concerned with "the conduct of the prosecutors in carrying out their functions," and so found that the difficulty should be charged to the prosecutor's office. This is an entirely different circumstance from the gross statutory change here implicated. While defendant argues that the prosecutor knew of the impending change in the Criminal Code (still almost nine months in the future, at the time the indictment was obtained), it seems to us not a "lack of organization" or anything akin thereto for the prosecutor to anticipate that the matter would have been tried and concluded by the time the statutory change occurred. Both codefendants were, in fact, concluded under a carnal abuse indictment apparently within that time. There is inherent here no sense or feel of this being a "late indictment" after the passage of an unreasonable period of time, as there obviously was in Moore, influencing that decision. The "additional evidence" prerequisite *183 for indictment required by the dictum in State v. Hill, 166 N.J. Super. 224, 230 (Law Div. 1978), rev'd on other grounds 170 N.J. Super. 485 (App.Div. 1979),[7] was compelled by the fact that the indictment had been dismissed because the grand jury evidence supporting it was not sufficient. These facts do not resemble a statutory change in any wise. The essence of State v. O'Keefe, 135 N.J. Super. 430 (Law Div. 1975), focuses upon the failure of the prosecutor to be prepared, at the time the matter was called for trial and in fact partially tried, to present evidence respecting an element essential to conviction. In that case the trial judge believed that the interruption of the trial because of this "inexcusable neglect" by the State and its consequence of "an unreasonable break in [trial] continuity" resulted in double jeopardy.[8] We cannot equate an error in judgment respecting the promptness with which a case would be tried, as here, with a failure to prepare to prove an essential element of the case and to commence the trial of the case without being thus prepared as in O'Keefe. Defendant's substantial reliance on State v. Gregory, 66 N.J. 510 (1975), is also misplaced. There was no effort at all on the part of the prosecutor to fractionalize the circumstances of this event into separate crimes or separate trials. See N.J.S.A. 2C:1-8 b. He was merely attempting to get to a trial on the merits of one who, if the allegations are true, was guilty of more than one crime prior to September 1, 1979 and of at least one crime even thereafter.
If it appeared that defendant had been acquitted after a consideration to a conclusion on the merits, no matter how *184 wrongful the testimonial basis upon which the acquittal was predicated, we would not hesitate to declare the righteousness of defendant's protestation at being retried. State v. Lynch, 79 N.J. 327 (1979). If we believed there was prosecutorial overreaching or undue zealousness or vindictiveness, we should not hesitate to draw the line. Substantial pan-tipping prejudice to defendant, even in the absence of any malevolence or misdoing, might well inure to his advantage. But none of these occurred in this matter. As a matter of fact, the weakness of defendant's position is to be found in the statement of his counsel at the argument below:
Your Honor, as I indicated this morning, when we were arguing this motion, [if] the Prosecutor had obtained a superseding Indictment without any action by the defendant in this case, there would have been nothing wrong with it whatsoever. But once there has been action by the defendant, they need new evidence. That's what the Federal cases say.
The prosecution of criminal activity is distinctly in the public interest. To defeat prosecution of activity which then and now constitutes a crime solely on the basis of who elects first to present to the court the fact of a statutory change seems to us to be an exaltation of technicalism at the expense of substantial justice.
The indictment is reinstated. The matter is remanded for trial.
NOTES
[1] In order, for instance, to support the claim of defendant in his counter-statement of facts that "[e]vidence identical to that presented to the grand jury which returned the indictment for carnal abuse was presented again to the ... Grand Jury which returned [the] superseding Indictment." See R. 2:6-1(a)(7).
[2] The original indictment simply charged that defendant "did unlawfully and carnally abuse [R.G.], a woman-child ... of ... the age 15 years." Compare N.J.S.A. 2C:14-2, 3 and 4. The amicus argues that the original indictment should not have been dismissed, urging that although the parties assumed that "the equivalent offense was N.J.S.A. 2C:14-2(b) and that ... the age differential between the victim and the defendant did not meet the requirements of that section," the "evidence adduced before the grand jury could have supported charges against the defendant under N.J.S.A. 2C:14-2a(5)(a) or 2C:14-3a." Theoretically, this argument may be sound. But the fact remains that the bare bones indictment did not charge the elements essential to prove guilt under N.J.S.A. 2C:14-2 a(5)(a) or 2C:14-3 a. The response is anticipated that congruency of offense is the target and that simple amendment or discovery might have cured any defect in the indictment. The fact remains that, as reassuring as the argument of the amicus may be, neither party objected to the striking and neither party raised the issue here. In view of the result we reach, we need not decide it.
[3] There are other deficiencies in the prosecutor's appendix. The same deficiency respecting the absence of a filing date appears in connection with the superseding indictment. Also, we do not have a copy of the motion papers with regard to the motion to dismiss the first indictment. Since there is apparently no dispute respecting dates or with regard to the procedure, we have relied upon the procedural history appearing in the prosecutor's brief.
[4] This indictment carefully charged that defendant "violently... did make an assault upon [R.G.] and forcibly against [her] will ... did ravish and carnally know her, contrary to the provisions of R.S. 2A:138-1." We observe, probably unnecessarily, that the act took place before enactment of the Code, so that unless otherwise improper, the indictment was correctly brought under N.J.S.A. 2A. See N.J.S.A. 1:1-15.
[5] We note that subsequent to the decision here, Andrews was reversed. 633 F.2d 449 (6 Cir.1980) (en banc), cert. den. 450 U.S. 927, 101 S.Ct. 1382, 67 L.Ed.2d 358 (1981).
[6] We need not here consider the question of whether the empaneling of a jury in such a case or, for instance, the proceeding to judgment, would constitute double jeopardy in the event of an effort to reindict thereafter.
[7] Counsel failed in his brief to report that the Law Division opinion was reversed. This is an inexcusable omission of subsequent history. If the reversal is qualified, such as being on other grounds or otherwise not militating against the asserted statement in the reversed opinion, the fact or facts may be noted. But the fact of reversal should never be omitted.
[8] For a recognition of the gray area that both separates and conjoins double jeopardy and due process questions, see State v. Laganella, supra, esp. 144 N.J. Super. 288.