NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0632-14T3

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

JONATHAN ZEMBRESKI,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **May 17, 2016**
>
> **APPELLATE DIVISION**

Argued November 17, 2015 — Decided May 17, 2016

Before Judges Fisher, Espinosa, and Rothstadt.

On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 14-05-1018.

Louis M. Barbone argued the cause for appellant (Jacobs & Barbone, P.A., attorneys; Mr. Barbone and John R. Stein, on the briefs).

Courtney M. Cittadini, Assistant Prosecutor, argued the cause for respondent (James P. McClain, Atlantic County Prosecutor, attorney; Ms. Cittadini, of counsel and on the briefs).

The opinion of the court was delivered by

ROTHSTADT, J.A.D.

In this case of first impression, we hold that a defendant commits an act of burglary, N.J.S.A. 2C:18-2, if he gains access

to his victim's residence by deception for the purpose of committing a crime.

Defendant Jonathan Zembreski appeals from the Law Division's judgment of conviction, entered after a jury found him guilty of robbery, burglary, and impersonating a law enforcement officer. Defendant's victim was a guest at a hotel and a gambling patron at its casino. The evidence presented was that defendant followed his victim to his room and gained access by claiming to be an FBI agent. Once inside, defendant threatened to prosecute the victim, demanded that he give defendant money, and slammed the door to the room on the victim's hand when he tried to escape, injuring him in the process.

Defendant's primary contention on appeal is that his conduct did not constitute burglary because, by opening the door, the victim gave defendant permission to enter. He also argues the trial court erred by failing to dismiss a superseding indictment returned after the final pretrial conference had been held, denying his motion for acquittal at the close of the State's case on the robbery and burglary counts, and failing to

provide him the opportunity to present supplemental closing arguments.[1]  We affirm.

## I.

An Atlantic County Grand Jury returned an indictment charging defendant with second-degree robbery by use of force, N.J.S.A. 2C:15-1(a)(1) (count one); fourth-degree impersonating a law enforcement officer, N.J.S.A. 2C:28-8(b) (count two); third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(2) (count three); second-degree burglary, N.J.S.A. 2C:18-2 (count four); and third-degree theft, N.J.S.A. 2C:20-3 (count five).  Before trial, defendant moved to dismiss all counts of the indictment, which the court denied in large part, dismissing only the possession charge and downgrading the theft charge.  After a final pretrial conference, but before trial, the prosecutor re-presented the matter to a grand jury. The grand jury returned a superseding indictment, again charging defendant with the same offenses, but adding a new count of second-degree robbery, N.J.S.A. 2C:15-1(a)(2), under the theory that defendant "purposely put [the victim] in fear of immediate bodily injury."  Defendant moved to dismiss the superseding indictment, which the court denied.  The court offered defendant

---

[1]  Defendant also contends the court erred in failing to grant a new trial, but the record does not disclose that such a motion was ever filed.

additional time to prepare for trial in light of the superseding indictment, but defendant declined the court's offer. Trial commenced on June 9, 2014, as scheduled, and the State rested the following day.

At trial, the following facts were established by the State's evidence. At around 8:30 p.m. on the evening of February 28, 2013, defendant's victim and his father began gambling at the hotel's casino. They continued for several hours, stopping at approximately 3:00 a.m. on March 1. Defendant was in the vicinity of the two men while they gambled, first sitting at an empty table nearby and later standing behind the victim's father. When the two men left the casino, defendant — who was wearing a baseball cap at the time — followed them onto an elevator, where he put on a hooded sweatshirt. Defendant exited the elevator when his victim got off on the twentieth floor. As the victim was halfway to his room, unaware defendant was behind him, he "heard a voice talking to [him]," saying something that sounded "like [']it's dark in here.[']" Given the late hour, the victim was "taken aback . . . . [and] a little startled." He hurried to his room, let himself in, and locked the door behind him.

Within seconds, the victim heard banging on his door and someone saying, "[T]his is the FBI, you need to open your door."

4

Tired, confused, and in significant pain from a recent surgery, the victim remained still until he heard more knocking and another order to open the door. When he looked through the peephole, he saw a "goldish badge with some dark lettering," but could not see any other details. He opened the door enough so that defendant, who the victim assumed was an FBI agent, was able to enter. Without the victim saying anything, defendant entered the room, flashed the badge, and said, "I'm from the FBI and we're watching you." When the victim asked to see the badge again, defendant refused.

Once inside, defendant asked the victim what he did for a living, and the victim responded that he was a physician. Defendant told the victim that the FBI had been investigating "physician practices and . . . the prescription of pain medication," and presented him with two options: face a "60 to 70 percent chance [of] . . . los[ing] [his] practice" or pay defendant "$10,000 or $5000 [to] . . . go away." When the victim said he did not have any money to give, defendant responded, "I've been watching you for two hours, I know you have money in your pocket."[2]

---

[2] Defendant gave a recorded statement to police that was played for the jury. In his statement, he stated that he watched as his victim won money playing craps and followed him to his room. He denied announcing he was an FBI agent, but admitted to
(continued)

A-0632-14T3

The victim moved towards the phone and told defendant, "[I]f you are the FBI, let me call security and let's work this out." When he picked up the receiver, defendant "grabbed the base of [the phone] and pulled on it," ripping the cord from the wall. The victim testified that, at this point, he was "really uncomfortable," but that his "initial reaction [of fear] had passed" and he had "decided to try to fight mentally." The victim walked to the door, saying the two should "go downstairs and get this worked out," but when he began to open the door, defendant "slammed on it and . . . it kind of shut on [the victim's] hand," causing it to bleed.

Over the course of the encounter thus far, the victim testified he had experienced "a whole spectrum of feelings from being stunned and kind of bewildered to being afraid to being uncomfortable to having a reaction to just kind of use [his] wits to try to fight" to finally being angry. At his "worst point," the victim feared he "was never going to see [his] wife again" because he "didn't know if [defendant] had a weapon or not and [he] wasn't in any physical condition to confront [defendant]."

_____

(continued)
holding a badge up to the room's peephole. He also admitted attempting to scare the victim in order to get money once he was in the room.

A-0632-14T3

The victim yelled at defendant for injuring him and defendant broke down and began sobbing, saying he had lost his father and brother in Hurricane Sandy and needed the money to pay for their funerals. The victim was still "trying to do whatever [he] could to get out of the room," thinking he would be safe if he could get himself and defendant out of the room and down to the casino floor. He suggested the two go downstairs, telling defendant he would "see what [he could] do to help." At around 3:18 a.m., the men took the elevator back down to the casino floor. Though the victim was beginning to feel sympathy for defendant, he still did not believe he would be "out of danger" until he reached the casino floor.

Once back in the casino, the victim walked towards the craps table where he had played earlier, with defendant following close behind. As the victim was still pretending he did not have money on him, he approached one of the pit bosses and "act[ed] like [he] was asking for money, but [instead] reached into [his] pocket and grabbed a [$500] chip." He gave the chip to defendant and told him to "take the money and leave." When defendant walked away, the victim was still feeling "shaken up" and asked the pit boss if security could escort him back to his room. When asked why he wanted an escort, the victim told security what had happened. The police

were summoned and, when they arrived, the victim relayed the events and identified defendant as the individual who entered his room.   Defendant was later arrested.

After the State rested, defendant moved for a judgment of acquittal on the burglary and two robbery counts, which the court denied.   With respect to the burglary count, the court found, based on the "the totality of the evidence" and giving the State the benefit of all reasonable inferences drawn therefrom, that defendant was not "licensed or privileged" to enter the victim's room because he had gained access to the victim's room by deception.   As to the robbery counts, the court found sufficient evidence to allow both theories to go before the jury based on the injury to the victim's hand and the reasonable inferences that could be drawn from his testimony regarding his emotions throughout his encounter with defendant.

After defendant rested,[3] the parties presented closing arguments.   Defendant then renewed his motion for acquittal on the burglary count, arguing the State could not "maintain a charge of burglary based upon intentional, purposeful or reckless conduct" because it had "conceded" in its summation that there was only "a chance that the victim could have been

---

[3]   Defendant called two witnesses, both of whom testified regarding only his reputation as a law-abiding citizen.

hurt by the slamming door." The court again denied the motion, reasoning that the State's summation was "not evidence, [but] argument."

The court charged the jury and, shortly before the end of the day, the jury questioned the court about its charge regarding the evidence necessary to establish unlawful entry, asking, "is it permission to enter a room if it's under false pretenses?" The court excused the jury for the day and directed the parties to submit briefs on the issue by the end of the following day. In his submission, defendant proposed additional instructions on the issue of permission as follows: "'Permission' means that [the victim] . . . let the defendant in [regardless of] what was in the mind of [the victim] when he responded to the knock at the door." The court declined to adopt defendant's suggestion and answered the jury's question by saying, "the simple answer under the law is no."

The jury returned its verdict the same day, finding defendant guilty of impersonating an officer, burglary, and robbery by fear of immediate bodily harm. It found defendant not guilty of robbery by use of force.

The court sentenced defendant to three years in prison on the robbery count, with the burglary count merged, and to a concurrent 365-day term on the impersonating an officer count.

A-0632-14T3

This appeal followed. On appeal, defendant specifically argues:

POINT I

THE TRIAL COURT ERRED IN FAILING TO DISMISS THE SUPERSEDED COUNT OF ROBBERY, RETURNED DAYS BEFORE TRIAL.

POINT II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE ON COUNT TWO, SECOND DEGREE BURGLARY.

POINT III

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE ON COUNT THREE, SECOND DEGREE ROBBERY.

POINT IV

THE TRIAL COURT'S INSTRUCTION ON THE DEFINITION OF PERMISSION AS IT RELATED TO COUNT TWO, SECOND DEGREE BURGLARY, WAS THE EQUIVALENT OF A DIRECTED VERDICT AND THUS THE TRIAL COURT ERRED IN FAILING TO GRANT A NEW TRIAL PURSUANT TO R. 3:20-1 ON COUNT TWO OF THE INDICTMENT.

POINT V

THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING SUPPLEMENTAL CLOSING ARGUMENTS AFTER DECLARING A NEW RULE OF LAW APPLICABLE TO THE CHARGE OF BURGLARY.

II.

We begin our review by addressing defendant's procedural claim that the trial court erred in denying his motion to

A-0632-14T3

dismiss the robbery charge in the superseding indictment that was returned four weeks before the trial date. Defendant argued in his motion that there was insufficient evidence to support the new robbery charge — i.e. robbery by threat or fear of harm — and that obtaining a new indictment after the final pretrial conference was fundamentally unfair. The trial court denied the motion because it found the evidence presented to the grand jury, including the victim's statement to police and his description of defendant's conduct in the hotel room, supported the new charge. The court also noted there was no claim of prosecutorial misconduct or "hiding any exculpatory evidence."

Defendant argues on appeal that obtaining a superseding indictment after the pretrial conference and with the trial already scheduled offended the fair and orderly administration of justice, violated his right to due process and "ha[d] a chilling effect on [his] exercise" thereof, was "fundamentally unfair," and "increased the probability of a conviction within weeks of the trial date and at a time where [d]efendant [wa]s powerless to meaningfully react." He asserts that, while he followed the Rules' procedures, the State was permitted to wait until the eve of trial to obtain the superseding indictment without "reasonable explanation or . . . demonstration of good cause" for its delay, and to benefit from defendant's exposure

of the weaknesses in its case by his motion to dismiss the original indictment. In support, he relies upon Rules 1:1-2(a) (requiring the rules "be construed to secure . . . fairness in administration"), 3:7-3(d) (requiring a supplemental indictment for murder be returned "no later than 90 days after the return . . . of the original indictment"), and 3:9-1(e) (governing pretrial conferences), and our decision in State v. Jones, 183 N.J. Super. 172 (App. Div. 1982). We disagree with his arguments and find his reliance on the cited Rules and decision to be inapposite.

We review a trial court's decision to deny a motion to dismiss an indictment for a clear abuse of discretion. State v. Lyons, 417 N.J. Super. 251, 258 (App. Div. 2010). "However, if a trial court's discretionary decision is based upon a misconception of the law, a reviewing court owes that decision no particular deference." Ibid.

One of the guiding principles to be followed by a court when considering a motion to dismiss an indictment is that "a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground." State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015) (alteration omitted) (quoting State v. Peterkin, 226 N.J. Super. 25, 38 (App. Div.), certif. denied, 114 N.J. 295 (1988)).

Therefore, once returned by a grand jury, an indictment should be disturbed "only when [it] is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996).

As there is no prohibition against a prosecutor seeking a superseding indictment before trial, an indictment is not "deficient" or "defective" because it is amended to include a new charge. See State v. Bauman, 298 N.J. Super. 176, 205 (App. Div.), certif. denied, 150 N.J. 25 (1997). "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." State v. Gomez, 341 N.J. Super. 560, 573 (App. Div.) (quoting Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S. Ct. 663, 668, 54 L. Ed. 2d 604, 611 (1978)), certif. denied, 170 N.J. 86 (2001). As "the initial charges filed . . . may not reflect the extent to which an individual is legitimately subject to prosecution," a prosecutor "remain[s] free before trial to exercise the broad discretion entrusted to him" and seek a superseding indictment when supported by the facts. Bauman, supra, 298 N.J. Super. at 205 (quoting United States v. Goodwin, 457 U.S. 368, 382, 102 S. Ct. 2485, 2493, 73 L. Ed. 2d 74, 86 (1982)). Thus, absent a showing of "vindictiveness" — meaning

"the prosecutor's action was solely [in] retaliation . . . for [defendant's] exercise of a legal right" — a superseding indictment will not be disturbed. Gomez, supra, 341 N.J. Super. at 575.

Defendant's reliance on Rule 3:7-3(d) for its requirement that good cause be shown for supplemental indictments returned more than ninety days after the original indictment is misplaced, as the Rule "address[es] indictments for crimes punishable by death[ and] ha[s] been rendered obsolete by the repeal of the death penalty." Pressler & Verniero, Current N.J. Court Rules, comment 3 on R. 3:7-3(d) (2016).[4] Similarly misplaced is defendant's reliance upon Rule 3:9-1(e), which provides the procedure for pretrial conferences. Nothing in the Rule prevents the prosecutor from re-presenting the matter to a grand jury after the conference has been held.

Jones also fails to lend defendant's argument any support. In that case, we found nothing in "New Jersey law which, without more, prohibits the seeking of a second indictment following the dismissal or quashing of the first indictment prior to, at the very least, the empaneling of a jury to try the indictment." Jones, supra, 183 N.J. Super. at 178. However, we suggested

_____

[4]   In fact, defendant recognizes "there is no time limitation with regard to all other indictments."

that concerns related to double jeopardy, collateral estoppel, statutory prohibitions of reindictment, and "considerations of fair play, characterized constitutionally as due process, might well in a given situation abrogate the right to reindict." Ibid. Nevertheless, we found these concerns inapplicable where the defendant was reindicted for rape after the offense for which he was originally indicted — carnal knowledge — was abrogated by the new rape statute enacted by the legislature. Ibid. The concerns we discussed in Jones are not applicable here.

As a prosecutor's broad discretion in charging decisions remains essentially unfettered until a jury is empaneled — at which point a superseding indictment is subject to the concerns we expressed in Jones — neither the decision to seek a superseding indictment, nor the timing of that decision, is sufficient to support defendant's claim that his due process rights were violated. To the extent that adding the additional robbery count increased the chance of defendant's conviction, it did so only by providing the jury with an alternate theory that may have more accurately reflected defendant's conduct. See Bauman, supra, 298 N.J. Super. at 205. And to the extent it impacted defendant's ability to prepare for trial, the trial court offered defendant more time to do so — an offer defendant

15                                                    A-0632-14T3

declined. We discern no abuse of the court's discretion in denying defendant's motion to dismiss the superseding indictment.

## III.

We turn next to defendant's primary contentions in Points II, IV, and V, in which he argues that the burglary count should have been dismissed, that the jury was improperly instructed because his entry into the victim's room was not unlawful, as he entered and remained in the victim's room with implied — if not express — permission, and that the court erred in failing to provide the opportunity for supplemental closing arguments "after declaring a new rule of law applicable to the charge of burglary." He also contends that if the victim's conduct in opening the door and allowing defendant to enter did not constitute permission, the burglary statute as applied is unconstitutionally vague.

The lynchpin in defendant's arguments is that his entry into the victim's hotel was not unlawful because he was "licensed" to enter, N.J.S.A. 2C:18-2(a), by virtue of the victim giving him "permission" to do so, even if that permission was obtained under false pretenses. Model Jury Charge (Criminal), "Burglary in the Second Degree, N.J.S.A. 2C:18-2(b)" (2010). The trial court maintained in its rulings and

16

instructions that defendant's entry was not licensed if secured by deception. We agree.

The resolution of the issue before us requires a determination of the proper interpretation of the statutory language — specifically, whether an individual can be considered licensed to enter a structure when permission to enter was obtained under false pretenses.[5] We hold that permission to enter, when obtained under false pretenses, does not give rise to a license to enter a structure.

Support for our conclusion does not require any exercise in statutory construction because applying the plain meaning of "license" "leads to a clear and unambiguous result." State v. D.A., 191 N.J. 158, 164 (2007). A license is "a revocable permission to commit some act that would otherwise be unlawful." Black's Law Dictionary 931 (7th ed. 1999). By giving permission to enter one's property, an individual provides the recipient a license to be on the property. See State ex rel. Qarmout v. Cavallo, 340 N.J. Super. 365, 367 (App. Div. 2001). However, "a

_____

[5] Defendant focuses his argument on the definition of "permission," which is used in the model jury charges but does not appear in the statute. See N.J.S.A. 2C:18-2(a); Model Jury Charge (Criminal), "Burglary in the Second Degree, N.J.S.A. 2C:18-2(b)," supra, at 1. He argues the definition of permission is unambiguous and that its plain meaning does not require the absence of deception. We find no merit to his argument.

license to enter premises for one purpose [can]not support remaining on the premises after the purpose ha[s] been concluded" or entry for a purpose other than that for which the license was granted. Id. at 368. Thus, where permission to enter is obtained under false pretenses, a license is granted for the false purpose while entry is made for another. The entry therefore exceeds the scope of the limited license and is unlawful, thereby subjecting the purported licensee to criminal liability for trespass and burglary. See id. at 367-68.[6] Notably, consistent with our understanding, the burglary statute specifically criminalizes "[s]urreptitiously remain[ing] in a . . . structure . . . knowing that [one] is not licensed or privileged to do so." N.J.S.A. 2C:18-2(a)(2). "Surreptitiously" means "stealthily and usu[ally] fraudulently done." Black's Law Dictionary, supra, at 1458 (emphasis added); see also Model Jury Charge (Criminal), "Burglary in the Second Degree, N.J.S.A. 2C:18-2b," supra, at 1 n.1.

Other states that have considered arguments similar to defendant's have rejected the notion that entry obtained through deception does not violate their respective burglary statutes. See, e.g., People v. Burke, 937 P.2d 886, 890 (Colo. App. 1996),

---

[6]    Under the criminal code, consent to enter the room, if not secured by deception, could provide a defense to a burglary charge. See N.J.S.A. 2C:2-10(c)(3).

cert. denied, No. 97SC82 (Colo. June 2, 1997), cert. denied, 522 U.S. 890, 118 S. Ct. 228, 139 L. Ed. 2d 160 (1997); State v. Newton, 755 S.E.2d 786, 789-90 (Ga. 2014); State v. Maxwell, 672 P.2d 590, 596-97 (Kan. 1983); State v. Lozier, 375 So. 2d 1333, 1337 (La. 1979); People v. Thompson, 501 N.Y.S.2d 381, 382-83 (App. Div. 1986); State v. Abdullah, 967 A.2d 469, 476 (R.I. 2009); State v. Pierce, 380 P.2d 725, 725 (Utah 1963). For example, in State v. Newton, the Supreme Court of Georgia held that interpreting "permission" to include fraudulently-obtained consent to enter would defeat the purpose of the burglary statute. Newton, supra, 755 S.E.2d at 789-90. After citing decisions from other jurisdictions that also saw no distinction between obtaining entry by physical force or through the use of deception, the Supreme Court of Georgia stated:

> Like the jurisdictions cited above, we see no meaningful difference between gaining entry by force and gaining consent to enter by artifice:
>
> > The purpose of the burglary statute is to protect against the specific dangers posed by entry into secured premises of intruders bent on crime. The intruder who breaches the barrier with a lie or deception, by pretending to deliver a package or to read a meter, is no less dangerous than his more stealthy cohorts, and nothing in the statute suggests an intent to exempt him from liability.

A-0632-14T3

[*Id.* at 790 (quoting <u>People v. Hutchinson</u>, 477 <u>N.Y.S.</u>2d 965, 966-67 (Sup. Ct. 1984), <u>aff'd</u>, 503 <u>N.Y.S.</u>2d 702 (App. Div.), <u>appeal denied</u>, 498 <u>N.E.</u>2d 156 (N.Y. 1986)).]

We agree with this logic and find it applicable to New Jersey's burglary statute and the facts in this case.

After applying this definition of license to the evidence adduced at trial regarding the burglary, we conclude that the trial court properly denied defendant's motions for acquittal and that the court properly instructed the jury in response to its question.

## IV.

As this definition of license is based on the term's plain meaning and not a pronouncement of a new rule of law, we find no merit to defendant's arguments in Points IV and V regarding the court's response to the jury's question and its impact on summations.[7]  <u>See</u> <u>State v. Afanador</u>, 151 <u>N.J.</u> 41, 57 (1997).  The trial court's response to the jury's inquiry was consistent with a common-sense interpretation of the statutory language, "giving

---

[7]    Though the record does not reflect that defendant made a motion for a new trial, we reject his argument that the court's response to the jury's question regarding permission constituted a directed verdict, requiring a new trial.  The court's response properly reflected the meaning of license and in no way directed the jury to find defendant guilty of burglary, as it did not instruct the jury to find defendant obtained permission by deception.  <u>See</u> <u>State v. Grenci</u>, 197 <u>N.J.</u> 604, 621-22 (2009).

effect to the terms of the statute in accordance with their fair and natural acceptation."  D.A., supra, 191 N.J. at 164 (quoting State v. Meinken, 10 N.J. 348, 352 (1952)).

V.

Turning next to defendant's arguments regarding the court's denial of his Rule 3:18-1 motions for a judgment of acquittal on the burglary and robbery counts, we review the trial court's denial de novo.  State v. Dekowski, 218 N.J. 596, 608 (2014). In doing so, we conduct an independent assessment of the evidence, applying the same standard as the trial court.  See State v. Williams, 218 N.J. 576, 593-94 (2014).

Pursuant to Rule 3:18-1, "[a]t the close of the State's case . . . the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction."  R. 3:18-1. It must determine only whether, "based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt."  Williams, supra, 218 N.J. at 594.  "If the evidence satisfies that standard, the motion must be denied." State v. Spivey, 179 N.J. 229, 236 (2004).  In deciding whether

a judgment of acquittal is warranted, the court "is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the State," State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974), certif. denied, 67 N.J. 72 (1975), and "no consideration may be given to any evidence or inferences from the defendant's case." State v. Reyes, 50 N.J. 454, 459 (1967).

Applying that standard, we discern no error by the trial court in denying defendant's motions at the end of the State's case and after the parties presented closing arguments.

## A.

We address first defendant's claim of error as it relates to the burglary count. A defendant commits burglary in the second degree when he enters a structure without being "licensed or privileged" and "with purpose to commit an offense therein," N.J.S.A. 2C:18-2(a), and, "in the course of committing the offense, . . . [p]urposely, knowingly or recklessly inflicts, attempts to inflict or threatens to inflict bodily injury on anyone." N.J.S.A. 2C:18-2(b)(1).

At trial, the victim testified that he opened the door because, after knocking, defendant asserted he was an FBI agent, and that defendant simply walked in. The victim did not remember saying anything before defendant entered, and testified

A-0632-14T3

explicitly that he did not invite defendant into the room. That testimony, and all reasonable inferences drawn therefrom, allowed a reasonable jury to find beyond a reasonable doubt that the victim did not invite defendant, FBI agent or otherwise, into the room by the mere act of opening the door, and that defendant's entry was therefore unlawful. To the extent it can be argued he did allow defendant in, the invitation did not constitute a license, as it was based upon defendant's use of deception.

Having determined that the trial court correctly found that defendant was not licensed to enter the victim's room if the victim's permission to do so was obtained by deception, we turn to his contention in Point II that the evidence presented by the State was insufficient to establish that he "purposely, knowingly or recklessly" harmed the victim.

For the purposes of second-degree burglary, a defendant causes injury recklessly

> when he consciously disregards a substantial and unjustifiable risk that [bodily injury] . . . will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
>
> [N.J.S.A. 2C:2-2(b)(3).]

A-0632-14T3

Here, the sum of defendant's actions leading up to the victim's injury — including following the victim to his room, entering the room and demanding payment to avoid prosecution, and ripping the phone out of the wall — led to the victim "trying to do whatever [he] could to get out of the room." When the victim moved towards the door to try to leave, defendant followed him, and when he tried to open the door, defendant quickly slammed it shut with the victim's hand still on the doorframe. While defendant claims that he "could not have seen [the victim's] left hand and certainly could not know that the [victim's] left hand was positioned in such a fashion that closing the door would scrape it," and that he closed the door "under undisputed factual circumstances where [he] could not see or know that [the victim's] left hand was broaching the door," his statements are not supported by the record.

As defendant was "in the course of committing" the underlying theft offense from the time he entered the room, all of his conduct upon entering the room and his act of slamming the door are relevant to the recklessness determination. Under the circumstances and giving the State the benefit of all reasonable inferences, the State's evidence was sufficient to support a jury finding that defendant acted in conscious disregard of a substantial and unjustifiable risk that the

24                                                    A-0632-14T3

victim would be injured and, as such, recklessly caused the victim's injury.

## B.

We next address defendant's argument that the court erred in denying his motion for acquittal on count three because there was insufficient evidence to establish beyond a reasonable doubt that he threatened the victim or "purposely put[] him in fear of immediate bodily injury," as required to support a conviction for second-degree robbery, N.J.S.A. 2C:15-1(a)(2). He argues that, to the extent the victim feared bodily injury, it was not due to defendant's purposeful conduct, and that, to the extent the victim feared that he would never see his wife again or that he would lose his medical practice, he did not maintain the fear of bodily injury necessary to establish robbery.

A defendant commits robbery in the second degree when, "in the course of committing a theft, he . . . [t]hreatens another with or purposely puts him in fear of immediate bodily injury." N.J.S.A. 2C:15-1(a)(2). The underlying theft is committed when an individual "unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof." N.J.S.A. 2C:20-3(a). The theft element is satisfied by an attempted or completed theft. N.J.S.A. 2C:15-1(a); see also State v. Whitaker, 200 N.J. 444, 459 (2009).

With respect to the threat element, "[t]he totality of the circumstances must be considered in determining if defendant's purpose was to put the victim in fear of immediate bodily injury." State ex rel. L.W., 333 N.J. Super. 492, 497 (App. Div. 2000). In making this determination, "[t]he focus . . . is on the conduct of the accused, rather than on the characteristics of the victim." State v. Smalls, 310 N.J. Super. 285, 292 (App. Div. 1998). However,

> no special words [or] conduct are required to make out a threat or to purposely put someone in fear of immediate bodily injury . . . . [and] there may be circumstances where conduct alone, without threats . . . , may be sufficient to justify a conclusion that the person purposely placed the victim in fear of immediate bodily injury . . . .

> [Ibid.]

Under the circumstances established at trial, the State presented evidence sufficient to defeat defendant's motion for acquittal. As to the first element of robbery, the evidence was sufficient to support a jury finding beyond a reasonable doubt that the theft element was satisfied — so much so that defendant does not challenge the sufficiency of the evidence regarding this element. Regardless of whether the victim ultimately gave defendant the $500 chip voluntarily, which is open to dispute, the evidence was sufficient to support a finding that he committed, at the very least, an attempted theft. See N.J.S.A.

26

2C:20-3(a) (defining theft); N.J.S.A. 2C:5-1 (defining criminal attempt). Defendant's conduct in watching the victim win at the craps table, following him upstairs, concocting the FBI ruse, and threatening his livelihood if he did not give defendant money, supported a jury finding beyond a reasonable doubt that defendant had the specific intent to unlawfully deprive the victim of his property.

As to the second element, the evidence was sufficient to support a jury finding that defendant purposely put the victim in fear of immediate bodily injury. The State presented testimony and evidence demonstrating that defendant discreetly followed the victim from the casino floor to the isolation of the twentieth floor and referenced the darkness of the hallway while following the victim to his room. The victim also testified that defendant entered his room without an explicit invitation, said he had been watching the victim gamble for hours and knew the victim had money, ripped the phone out of the wall when the victim tried to call for help, and slammed the door closed when the victim tried to leave the room. Furthermore, these events unfolded at 3:00 a.m., defendant's demeanor was "confrontational," and he entered the room under the guise of being a law enforcement officer and, therefore, presumably armed. Given the totality of the circumstances, the

27                                                                A-0632-14T3

State's evidence supported a jury finding beyond a reasonable doubt that defendant purposely put the victim in fear of immediate bodily harm, even in the absence of an explicit threat.

## VI.

In sum, we find defendant's arguments to be without merit, and discern no reason to disturb his conviction.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0632-14T3