**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1693-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

AMGAD A. HESSEIN,

    Defendant-Appellant.

_____

> Submitted September 12, 2018 – Decided  October 1, 2018
>
> Before Judges Haas and Sumners.
>
> On appeal from Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-08-0812.
>
> Adam W. Toraya, attorney for appellant.
>
> Michael A. Monahan, Acting Union County Prosecutor, attorney for respondent (Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Amgad A. Hessein, a physician, and co-defendant Ashraf A. Sami (collectively defendants) were the subjects of a joint investigation by the Union County Prosecutor's Office and the Office of the Inspector General of the United States Department of Health and Human Services regarding alleged medical billing fraud concerning their patients at Advanced Pain Management Specialists (APMS). Based upon an affidavit supported by information concerning inconsistencies in APMS' billing practices from former employees and patients of APMS, and insurance billing data from Medicare, Medicaid, and insurance companies, Judge Joseph P. Donohue issued a warrant authorizing a search of APMS' office, which expressly permitted the seizure of any documents pertaining to the billing and performance of services provided by defendants, any person associated with defendants, or APMS from 2005 to 2010.

Among the documents seized were records that, coupled with interviews of APMS employees, revealed to investigators that defendant was traveling out of the state when he billed for medical services, which he allegedly provided to patients in his office. Based upon the newly acquired information, Judge Donohue issued a second warrant permitting a further search of records in APMS' office. Consequently, defendants were charged in a seventy-four count

A-1693-16T1

indictment – defendant was named in thirty-eight of the counts – with an extensive medical billing fraud scheme involving over more than $1.5 million.

Following his indictment, defendant filed two unsuccessful motions to suppress warrants authorizing the search and seizure of his office records. Judge Robert J. Mega denied both motions for reasons set forth in written decisions. A motion to dismiss the indictment followed, which Judge Mega also denied and explained in a written decision. Defendant then entered into a plea agreement with the State, in which he pled guilty before Judge John M. Deitch to second-degree theft by deception, N.J.S.A. 2C:20-4(a), and second-degree conspiracy to commit health care fraud, N.J.S.A. 2C:5-2(a)(1), with all of the remaining counts of the indictment against him dismissed. Before he was sentenced, defendant's motion to withdraw his guilty plea was denied by Judge Deitch for reasons explained in a written decision. Judge Deitch sentenced defendant to an aggregate prison term of eight years, and ordered him to pay restitution in the amount of $235,093.75 and to forfeit $2,000,000.

Defendant appeals contending:

> POINT I
> THE COURT ERRED IN DENYING DEFENDANT'S PRE-SENTENCE MOTION TO WITHDRAW FROM HIS GUILTY PLEA.

A-1693-16T1

A.  IN CONSIDERING SLATER FACTOR NUMBER TWO, THE NATURE AND STRENGTH OF DEFENDANT'S REASONS FOR WITHDRAWAL, THE COURT ERRED IN FAILING TO ADDRESS HIS ASSERTION THAT A PROBATIONARY SENTENCE WAS EXPLAINED TO HIM BY TRIAL COUNSEL AS A REALISTIC OUTCOME.

B.  IN CONSIDERING SLATER FACTOR NUMBER ONE, THE DEFENDANT'S COLORABLE CLAIM OF INNOCENCE, THE COURT ERRED IN FAILING TO CONSIDER HIS CERTIFICATION AND NUMEROUS ATTACHMENTS THAT HAD BEEN ATTACHED IN SUPPORT.

C.  IN CONSIDERING SLATER FACTORS ONE AND TWO, THE COURT ERRED IN FAILING TO APPLY THE LESS STRINGENT STANDARD WHICH APPLIES TO ALL MOTIONS TO WITHDRAW A PLEA BEFORE SENTENCING.

D.  THE COURT ERRED IN FAILING TO CONDUCT AN EVIDENTIARY HEARING WHERE THE DEFENDANT COULD HAVE ESTABLISHED THAT HIS ATTORNEY TOLD HIM A PROBATIONARY SENTENCE WAS POSSIBLE.

POINT II
THE COURT ERRED IN ACCEPTING THE DEFENDANT'S PLEA WITHOUT AN ADEQUATE FACTUAL BASIS.

POINT III
THE COURT ERRED IN FAILING TO GRANT THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT WHEN THE PROSECUTION WITHHELD CLEARLY EXCULPATORY EVIDENCE FROM THE GRAND JURY AND

4

PROVIDED        MATERIAL        MISTATEMENT
REGARDING ITS ROLE.

POINT IV
THE COURT ERRED IN FAILING TO SUPPRESS
THE WARRANTS THAT AUTHORIZED THE
SEARCH AND SEIZURE OF THE DEFENDANT'S
MEDICAL OFFICE BECAUSE THE FIRST
WARRANT WAS A NON-PARTICULAR GENERAL
WARRANT.

POINT V
THE SENTENCE RECEIVED BY DEFENDANT
WAS ERRONEOUS AND EXCESSIVE.

For the reasons that follow, we affirm.

We first address defendant's argument in Point III that Judge Mega erred in not granting his motion to dismiss the indictment.[1] He argues that the State unduly influenced the grand jury's decision to indict where an investigating detective falsely testified that two APMS employees, who claimed defendants submitted fraudulent billing requests, voluntarily left their employment, and withheld information that they were civilly suing defendants. He also argues the prosecutor improperly stated that the State had met its burden of proof by stating, "there is a prima facie case." We disagree and affirm substantially for the reasons stated by Judge Mega in his cogent written decision.

---

[1] Defendant's motion raised several issues, but we only address those challenged on appeal.

A-1693-16T1

An indictment is presumed valid and should only be dismissed if it is "manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 229 (1996). We review a trial court's decision on a motion to dismiss an indictment for a clear abuse of discretion. State v. Zembreski, 445 N.J. Super. 412, 424 (App. Div. 2016).

> One of the guiding principles to be followed by a court when considering a motion to dismiss an indictment is that "a dismissal of an indictment is a draconian remedy and should not be exercised except on the clearest and plainest ground." State v. Williams, 441 N.J. Super. 266, 271 (App. Div. 2015) (alteration omitted) (quoting State v. Peterkin, 226 N.J. Super. 25, 38 (App. Div.) . . . . Therefore, once returned by a grand jury, an indictment should be disturbed "only when [it] is manifestly deficient or palpably defective." State v. Hogan, 144 N.J. 216, 228-29 (1996).
>
> [Zembreski, 445 N.J. Super. at 424-25.]

While it is clear "the State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth,'" Hogan, 144 N.J. at 236, the record does not support a conclusion that the grand jury was misled in the State's presentation to the grand jury.

Although the detective misinformed the grand jurors that the two employees left on their own and did not advise them that the employees were suing defendants, the judge correctly found this was insufficient to warrant

dismissal of the indictment. The judge found "[t]he State presented evidence of statements made by patients, billing records, and travel records demonstrating defendant's alleged fraudulent actions and corroborating [the employees'] statements, while providing more than enough evidence to satisfy a prima facie case against defendants." He also reasoned that the employees' "civil lawsuit against defendants would not clearly exculpate defendants of any of their charges or directly negate their guilt on any of the counts in the present [i]ndictment."

As for prosecutorial misconduct, we detect none, as did Judge Mega. The prosecutor stated to the grand jury:

> And I think one of the things maybe to help you along is we're looking at, in a lot of these counts we're looking at knowledge and the inner workings of the office, and we're not specifically saying we know what's in Sami's[2] brain, and [Hessein's] brain at all times. But from the circumstances and the – and the abundance of the evidence that you look at, that being the patient statements, that being the worker's statements, that being the circumstantial evidence surrounds that, that there is – as it is in the Grand Jury, there is a prima facie case.

The prosecutor's "prima facie" statement was not an attempt to persuade the jury the State had met its burden. As the judge noted, the statement was made upon

---

[2] Co-defendant Ashraf A. Sami.

a juror's inquiry about whether the co-defendant was directly involved in all the charges that were listed, and, thus, it was a reasonable "attempt to provide the grand jury with a road map for evaluating all the circumstantial evidence to determine each defendant's culpability on each of the respective proposed counts of the [i]ndictment."

In Point IV, defendant contends Judge Mega erred in not granting his motion to suppress the records seized pursuant to the first search warrant under the exclusionary rule, State v. Badessa, 185 N.J. 303, 311 (2005), because the warrant's supporting affidavits lack of specificity. We are unpersuaded.

"[A] search executed pursuant to a warrant is presumed to be valid" and . . . a defendant challenging its validity has the burden to prove 'that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Jones, 179 N.J. 377, 388 (2004) (quoting State v. Valencia, 93 N.J. 126, 133 (1983)). "Accordingly, courts 'accord substantial deference to the discretionary determination resulting in the issuance of the [search] warrant.'" State v. Keyes, 184 N.J. 541, 554 (2005) (alteration in original) (quoting Jones, 179 N.J. at 388). When "reviewing a grant or denial of a motion to suppress [we] must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient

credible evidence in the record." State v. Gamble, 218 N.J. 412, 424 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)). We "should reverse only when the trial court's determination is 'so clearly mistaken that the interests of justice demand intervention and correction.'" Id. at 425 (quoting Elders, 192 N.J. at 244). "A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference. Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)). Any "doubt as to the validity of the warrant 'should ordinarily be resolved by sustaining the search.'" Keyes, 184 N.J. at 554 (quoting Jones, 179 N.J. at 389 (2004)).

With these principles in mind, we affirm the denial of defendant's suppression motion, substantially for the sound reasons set forth in Judge Mega's thorough written decision.[3] As the judge found, based upon the wide-ranging allegations of fraudulent billing, the items listed in the warrant all related to defendant's medical practice, his billing practices, and the storage of these items. He reasoned that, these facts, combined with the "vast and complex nature and circumstances of the instant matter permit the usage of generic terms, and the

---

[3] Defendant's motion raised several issues, but we only address those challenged on appeal.

[w]arrants properly included the wide array of documentation as potential evidence of the numerous alleged instances of healthcare fraud, theft and conspiracy for which defendant[] [was] charged." We agree with the State that the Fourth Amendment to the United States Constitution "mandates that [a search warrant's] 'description is such that the officer with . . . [the] warrant can with reasonable effort ascertain and identify the place intended.'" State v. Marshall, 199 N.J. 602, 611 (2009) (quoting Steele v. United States, 267 U.S. 498, 503 (1925)). Thus, the judge properly ruled that, under the totality of the circumstances, the warrant was not impermissibly vague or broad and sufficiently specified where the items of interest were stored.

We next address defendant's contention in Point II, raised for the first time on appeal, that Judge Deitch erred in accepting his second-degree health care fraud guilty plea because it was not supported by a factual basis that he knowingly billed for services that were not provided. He argues his plea colloquy acknowledged that he failed to properly oversee his office's billing through a third-party billing company, which establishes a reckless intent, but not a knowing intent.

Since the contention is raised for the first time on appeal, we review it under the plain error standard to determine if the error was "clearly capable of

10

producing an unjust result." R. 2:10-2. To sustain a guilty plea to a criminal offense, Rule 3:9-2 requires that a factual basis must be elicited. "The factual foundation may take one of two forms; defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[] . . . facts constituting the essential elements of the crime.'" State v. Campfield, 213 N.J. 218, 231 (2013) (alterations in original) (quoting State v. Sainz, 107 N.J. 283, 293 (1987)).

Defendant's argument is belied by the record. During his colloquy, he admitted to submitting claim forms on diverse dates in 2006 and 2010 with the intention to obtain compensation for services not rendered. He did not shift responsibility to a third party or indicate that his conduct was reckless. Thus, since defendant's contention that he failed to admit he knowingly submitted false billing claims for payment lacks merit, obviously, no unjust result has occurred.

Turning to Point III, defendant contends Judge Deitch abused his discretion by misapplying State v. Slater, 198 N.J. 145, 157-58 (2009), when considering his motion to withdraw his guilty plea under the less stringent interest of justice standard and made incorrect factual findings. Defendant maintains that his motion was supported by his certification and numerous attachments establishing his innocence. However, the main emphasis of his

11

request to withdraw his plea was his claim that his counsel misled him to believe that he would receive probation, not a prison term, and that he was not aware he would lose his license to practice medicine. Finally, defendant claims the judge should have conducted an evidentiary hearing before deciding the motion. In his thorough written decision denying defendant's motion to withdraw his plea, Judge Deitch applied the four-factor Slater test:

> (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.
>
> [Slater, 198 N.J. at 157-58.]

We affirm substantially for the reasons expressed in the judge's decision. We add the following brief comments.

Applying the interest of justice standard in evaluating defendant's motion, the judge viewed his certification as, "nothing but generalities" and not providing specific, credible facts to support his position that he was innocent. He rejected defendant's uncertified documents as untrustworthy. The judge pointed out that the record contradicted his claims that he was not aware he would lose his medical license or be sentenced to prison. In fact, defendant responded "yes" to question eight of his plea form that stated, "[a]re you

A-1693-16T1

pleading guilty to a crime that contains a presumption of imprisonment which means that it is almost certain that you will go to state prison?"

Lastly, we address defendant's contention in Point V that his sentence was excessive because Judge Deitch should have found that the mitigating factors substantially outweighed the aggravating factors, instead of finding the opposite. The judge applied aggravating factors one and nine, N.J.S.A. 2C:44-1(a)(1) (nature and circumstances of the offense, including whether it was committed in especially heinous, cruel, or depraved manner); -1(a)(9) (the need to deter), and mitigating factors six and seven, N.J.S.A. 2C:44-1(b)(6) (has or will compensate the victims); -1(b)(7) (no prior criminal history). Defendant argues the judge should not have applied aggravating factor one because his offenses were not committed in a "heinous, cruel or depraved manner."

Review of a criminal sentence is limited; a reviewing court must decide "whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). Under this standard, a criminal sentence must be affirmed unless "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record;' or (3) 'the application of the guidelines to the facts' of the case 'shock[s]

the judicial conscience.'" Ibid. (alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)). If a sentencing court properly identifies and balances the factors and their existence is supported by sufficient credible evidence in the record, this court will affirm the sentence. See State v. Carey, 168 N.J. 413, 426-27 (2001); State v. Megargel, 143 N.J. 484, 493-94 (1996). Aggravating factor one is not limited only to those crimes involving physical injury. See, e.g., State v. Byard, 328 N.J. Super. 106, 116 (App. Div. 2000); State v. DeRoxtro, 327 N.J. Super. 212, 226 (App. Div. 2000); State v. Blow, 237 N.J. Super. 184, 193 (App. Div. 1989).

Because we find support in the record for the judge's findings and the sentence does not shock our judicial conscience, we are unconvinced that the judge erred in sentencing defendant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1693-16T1