**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0517-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

DAMON WILLIAMS, a/k/a
DANEN WILLIAMS, DAVID
BOWMAN, and DAMON
BAILEY,

     Defendant-Appellant.

_____

Submitted September 9, 2019 – Decided September 19, 2019

Before Judges Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-12-3823.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Nancy Philion Scharff, Assistant Prosecutor, of counsel and on the brief).

Appellant filed pro se supplemental briefs.

PER CURIAM

Defendant Damon Williams appeals his conviction of second-degree robbery pursuant to N.J.S.A. 2C:15.1(a). Defendant also appeals the trial court's imposition of an extended sentence pursuant to N.J.S.A. 2C:44-3(a). Having reviewed the record in light of the applicable legal principles, we affirm.

At approximately 9:40 a.m. on August 13, 2014, defendant,[1] carrying a white bag and wearing a sweatshirt, dark pants, a blue New York Giants hat and aviator sunglasses, entered the lobby of the Bank of America branch in Merchantville, New Jersey. Defendant approached the window of teller Maria Cervantes, bent down until the two were at eye level, and leaned close to the bars of the cage separating the teller from the customers. Defendant passed Cervantes a note reading, "Please, all the money, 100, 50, 20, 10. Thank you." Defendant did not brandish or threaten the use of any weapon, nor did he make any verbal threat of violence if Cervantes did not comply with his request.

---

[1] Defendant made an argument below that he had an alibi for the time of the offense; however, he has not raised the issue on appeal and we therefore consider that issue waived. See In re Bloomingdale Convalescent Ctr., 233 N.J. Super. 46, 48 n.1, (App. Div. 1989) (citing Kelly v. Hackensack Meadowlands Dev. Com., 172 N.J. Super. 223, 228 n.1 (App. Div. 1980)). Indeed, on appeal defendant does not seriously dispute that he was the person who committed the offense.

A-0517-17T4

Cervantes opened her cash drawer and gave the man approximately $4600. When Cervantes tried to include a pack of $20 bills containing a GPS tracker, which would trigger an alarm, the man motioned for her not to do that. The man then left the bank at 9:44 a.m. According to Cowgill, another bank teller who was present that day, Cervantes was crying and shaking when the man left. Cowgill subsequently triggered the alarm.

After a trial, the jury convicted defendant of second-degree robbery. The trial court granted the State's motion to impose an extended term of imprisonment pursuant to N.J.S.A. 2C:44-3(a), and sentenced defendant to an extended term of fourteen years, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 (NERA). This appeal ensued.

On appeal, defendant presents the following arguments for our review:

POINT ONE
DEFENDANT WAS ENTITLED TO A JUDGMENT OF ACQUITTAL ON THE SECOND[-]DEGREE ROBBERY CHARGE

POINT TWO
A MISLEADING JURY INSTRUCTION AND VERDICT SHEET ON SECOND[-]DEGREE ROBBERY DENIED DEFENDANT A FAIR TRIAL (Not Raised Below)

POINT THREE
THE TRIAL COURT'S REFUSAL TO ADMIT INTO EVIDENCE DEFENDANT'S D-6, WHICH WAS OFFERED TO ILLUSTRATE A

A-0517-17T4

PROPERLY PREPARED FINGERPRINT ANALYSIS SHEET WAS ERROR WHICH UNDULY PREJUDICED THE DEFENSE[2]

POINT FOUR
THE PROSECUTOR'S COMMENTS AND USE OF A PHOTOGRAPH NOT IN EVIDENCE DURING SUMMATION DENIED DEFENDANT A FAIR TRIAL

POINT FIVE
THE TRIAL COURT'S IMPOSITION OF AN EXTENDED TERM OF IMPRISONMENT WAS AN ABUSE OF DISCRETION WHICH RESULTED IN AN EXCESSIVE SENTENCE

We will address each of these issues in turn.

Denial of defendant's motion for acquittal

Defendant argues that because he did not brandish or threaten the use of a weapon, and because he did not overtly threaten the bank teller with any injury if she did not accede to his demands, he "engaged in no demonstration or threat as to create a reasonable apprehension on the part of the teller." Accordingly, defendant argues, no reasonable jury could find him guilty of the elements of robbery, and the trial court erred by denying his motion for acquittal at the end of the State's case. We disagree.

We review the denial of a motion for acquittal de novo. State v. Dekowski, 218 N.J. 596, 608 (2014).

---

[2] Defendant filed a supplemental pro se brief that largely reiterates and expands upon his objection to the fingerprint analysis.

4

> At the close of the State's case or after the evidence of all parties has been closed, the court shall, on defendant's motion or its own initiative, order the entry of a judgment of acquittal of one or more offenses charged in the indictment or accusation if the evidence is insufficient to warrant a conviction.
>
> [R. 3:18-1.]

The standard for such a motion is as follows:

> [T]he broad test for determination of such an application is whether the evidence at that point is sufficient to warrant a conviction of the charge involved. More specifically, the question the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967) (citations omitted).]

See also State v. Wilder, 193 N.J. 398, 406 (2008).

"In assessing the sufficiency of the evidence, the relevant inquiry is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Martin, 119 N.J. 2, 8 (1990) (quoting State v. Brown, 80 N.J. 587, 592 (1979)). "[T]he trial judge is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence,

but only with its existence, viewed most favorably to the State."  State v. Kluber, 130 N.J. Super. 336, 342 (App. Div. 1974) (citation omitted).

Robbery is a second-degree crime, and

> [a] person is guilty of robbery if, in the course of committing a theft, he: (1) Inflicts bodily injury or uses force upon another; or (2) Threatens another with or purposely puts him in fear of immediate bodily injury; or (3) Commits or threatens immediately to commit any crime of the first or second degree.
>
> [N.J.S.A. 2C:15-1(a); State v. Whitaker, 200 N.J. 444, 459 (2009) (emphasis omitted).]

When the theory of robbery is based on a threat or "purposely put[ting another] in fear of immediate bodily injury," N.J.S.A. 2C:15-1(a)(2), the "'totality of the circumstances must be considered in determining if defendant's purpose was to put the victim in fear of immediate bodily injury.  In making this determination, '[t]he focus . . . is on the conduct of the accused, rather than on the characteristics of the victim.'"  State v. Zembreski, 445 N.J. Super. 412, 433 (App. Div. 2016) (citations omitted) (alterations in original).  "To be sure, no special words and/or conduct are required to make out a threat or to purposely put someone in fear of immediate bodily injury . . . ."  State v. Smalls, 310 N.J. Super. 285, 292 (App. Div. 1998).

The State's theory of the robbery at trial was that defendant purposely put Maria Cervantes, the teller who gave defendant the money, in fear of immediate bodily injury. Both Cervantes and Cowgill testified that defendant walked up to Cervantes' station very quickly, bent down and leaned in very close to the cage separating the teller from customers. Cervantes specifically testified that defendant was "in her space" and that she was very frightened and nervous during the incident. Although defendant did not overtly verbally threaten Cervantes with any consequence if she did not comply with his demand for cash, he did pass her a note demanding money. Cowgill confirmed Cervantes' account, and testified that Cervantes was crying and shaking after defendant left.

Taking into consideration the totality of the circumstances presented at trial, a rational fact finder could conclude that defendant's proximity to Cervantes, his haste in entering Cervantes' teller station, his leaning down and pressing his face very close to the bars of the cage, and his demand for money from a bank teller, would have reasonably put her, or any reasonable bank teller, in fear of immediate bodily injury. See Martin, 119 N.J. at 8. In that regard, Cervantes had no reason to know what defendant would do if she simply said "no thank you" and declined defendant's "request." It was reasonable under the circumstances for a teller in Cervantes' position to fear that if she refused,

defendant may well have had a weapon on him even if he did not brandish one. Accordingly, a rational fact finder would have been able to, and did, conclude that defendant's actions amounted to robbery. See Zembreski, 445 N.J. Super. at 433. The trial court thus correctly denied defendant's motion for acquittal.

Jury charge on robbery

Defendant argues, for the first time on appeal, that the trial court erroneously allowed the State to "include[] in the robbery jury instruction and on the verdict sheet, the options to convict [d]efendant of robbery based upon the knowing infliction of bodily injury, or the use of force against" the bank teller. Defendant contends this was an error because the State based its theory of the robbery on defendant's purposeful placing the bank teller in fear of immediate bodily injury.

At the outset, generally "issues not raised below will . . . not be considered on appeal unless they are jurisdictional in nature or substantially implicate the public interest." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010) (citation omitted). However, "appellate court[s] may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court[,]" if "it is of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2. "The mere possibility of an unjust result is not

8

enough" to find plain error. State v. Funderburg, 225 N.J. 66, 79 (2016). The possibility of an unjust result must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Melvin, 65 N.J. 1, 18-19 (1974); see also State v. Macon, 57 N.J. 325, 335 (1971) ("No matter how a test may be stated, the question whether an error is reason for reversal depends finally upon some degree of possibility that it led to an unjust verdict.").

"'Appropriate and proper charges to a jury are essential to a fair trial.' And proper explanation of the elements of a crime is especially crucial to the satisfaction of a criminal defendant's due process rights." State v. Burgess, 154 N.J. 181, 185 (1998) (citations omitted).

> It is the independent duty of the court to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case, irrespective of the particular language suggested by either party. Finally, "[a]s an indication of the paramount importance of accurate jury instructions, we have held that erroneous instructions on material issues are presumed to be reversible error."
>
> [State v. Reddish, 181 N.J. 553, 613 (2004) (citations omitted).]

In this case, not only did defendant fail to object to the jury instructions, but his counsel affirmatively stated that he was "satisfied" with the instructions.

9

Beyond this, however, the trial court used language from the model jury instructions, which indisputably was an accurate charge on the elements of robbery. See Reddish, 181 N.J. at 613. Although the trial court also charged the jury on the alternative bases to convict, the charge included the language concerning purposely placing the teller in fear of immediate bodily harm, which was very plainly the State's theory at trial. We thus conclude that there was no error, let alone plain error, in the trial court's jury charge instruction to the jury on robbery. See M.C. III, 201 N.J. at 339.

Denial of the admission of defendant's exhibit D-6.

We also reject defendant's argument that the trial court abused its discretion in refusing to admit defendant's exhibit D-6 because it would have shown the jury that the fingerprint analysis was not properly conducted in this case.

Crime Scene Unit Detective Victoria Fallon collected the note requesting money, examined it for fingerprints, and found six latent fingerprints on the note. All of the latent prints were partial prints, and three of them were usable. Detective Fallon sent the fingerprints to the Camden County Sheriff's Department to be submitted to the Automated Fingerprint Identification System (AFIS). At the Sheriff's Department, Record Support Technician Sheryl

Klemowitz processed the fingerprints through AFIS on August 27, 2014. AFIS linked one of the fingerprints to defendant.

Klemowitz made the fingerprint comparison on October 27, 2014. Detective Fallon was present when she made the comparison, and Fallon took the evidence back with her that same day when the comparison was complete. Klemowitz matched one of the latent prints from the note to defendant's left thumb print, but she was not sure how many points of comparison she found.

On cross-examination, Klemowitz admitted that verification of her fingerprint analyses is an important part of the process, but that, although the name of the verifier is supposed to be documented, she did not do so in this case. Defendant offered D-6,[3] an exhibit from an unrelated case, as an example of the proper way to complete the documents. The trial court ruled that the exhibit was inadmissible as unrelated and therefore irrelevant.

An appellate court reviews a trial court's evidentiary rulings for abuse of discretion. Brenman v. Demello, 191 N.J. 18, 31 (2007). Thus, an appellate court will not disturb a trial court's evidentiary rulings unless they are "so wide off the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

---

[3] At the suppression hearing, this exhibit was labeled "D-5."

A-0517-17T4

However, an appellate court will review questions of law de novo. Balsamides v. Protameen Chems., 160 N.J. 352, 372 (1999).

Trial errors that were brought to the attention of the court are reviewed for harmful error. State v. Mohammed, 226 N.J. 71, 86 (2016) (citations omitted). "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ." R. 2:10-2. Thus, if a trial court is found to have abused its discretion, or otherwise erred, the appellate court must then determine whether that error amounted to harmful error, provided the alleged error was brought to the trial court's attention. See State v. Prall, 231 N.J. 567, 581 (2018) ("Our review of the evidentiary determinations cannot end our analysis when we find an abuse of discretion; rather, we must then determine whether any error found is harmless or requires reversal.").

Except in certain circumstances, relevant evidence, which is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action[,]" is admissible. N.J.R.E. 401, 402. See also State v. Castagna, 400 N.J. Super. 164, 174 (App. Div. 2008). The evidence must be probative of a fact that is "really in issue in the case[,]" as determined by

reference to the applicable substantive law.  State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)).

Here, the trial court properly exercised its discretion in refusing to admit defendant's exhibit D-6 because the exhibit, in and of itself, was not relevant to whether the fingerprint analysis was conducted properly in this case.  See Brenman, 191 N.J. at 31.  In that regard, defendant did not offer any witnesses, expert or otherwise, who would testify that the differences between the two documents demonstrated that defendant's fingerprint analysis was conducted improperly.  Without that vital testimony to establish what errors were made and what impact, if any, the alleged errors would have had on the reliability of Klemowitz's analysis, we agree that D-6 was properly excluded as evidence.[4]

Prosecutor's comments and displaying a photo not in evidence during summation

Defendant contends that the State misstated the law of theft when it provided an under inclusive example of what could constitute theft during summations.  Defendant also contends that the State's use of a still photo from

---

[4]  Even if defendant had called an expert to explain the proper procedures for conducting a fingerprint analysis, D-6 would not have been entered into evidence but would serve merely as a demonstrative exhibit.

The Shining to illustrate how defendant put the bank teller in fear of immediate bodily injury amounted to prosecutorial misconduct.

Prosecutorial misconduct is not ground for reversal of a criminal conviction unless the conduct "was so egregious that it deprived defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999) (citing State v. Ramseur, 106 N.J. 123, 322 (1987)). "[P]rosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented. Indeed, prosecutors in criminal cases are expected to make vigorous and forceful closing arguments to juries." State v. Smith, 167 N.J. 158, 177 (2001) (citations omitted).

> To justify reversal of a criminal conviction, the prosecutor's conduct must "substantially prejudice the defendant's fundamental right to have a jury fairly evaluate the merits of his defense." The misconduct must be "so egregious that it deprived defendant of a fair trial."
>
> Not every instance of misconduct in a prosecutor's summation will require a reversal of a conviction. There must be a palpable impact. Although prosecutors may suggest legitimate inferences from the record, they may not go beyond the facts before the jury.
>
> [State v. Roach, 146 N.J. 208, 219 (1996) (citations omitted).]

In determining whether alleged prosecutorial misconduct is a ground for reversal, we

> must take into account the tenor of the trial and the degree of responsiveness of both counsel and the court to improprieties when they occurred. Specifically, an appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and instructed the jury to disregard them.
>
> [Frost, 158 N.J. at 83 (citations omitted).]

During summation, the State made the following comments regarding the lesser-included offense of theft from the person:

> The lesser included that the Judge has - has read to you or will read to you, it's not a fact. Theft from the person? He didn't reach into her purse and take $4,600. Why is that? Because the money was in the drawer. And he knew the bait money was in the drawer, and knew enough to tell her not to take the bait money. This isn't a theft. This isn't pickpocketing her. This is nothing short of a robbery.

Defense counsel objected to the State's comments as a misstatement of the law on theft. The court overruled the objection, finding that the State's argument that defendant's demand for money wasn't "pickpocketing" to argue that defendant's conduct was a robbery, rather than a theft, was merely an example of what could constitute a theft.

A-0517-17T4

Beyond this, the trial court correctly instructed the jury on the law of robbery and the law of the lesser-included offense of theft. The court instructed the jury that counsel's comments are merely argument and not binding on them. We assume that the jury followed the court's instructions. See State v. Little, 296 N.J. Super. 573, 580 (App. Div. 1997) (citations omitted). Accordingly, we find that the trial court was correct in overruling defendant's objection, and that the State's comments regarding the evidence were not egregious, and did not deprive defendant of a fair trial. See Ramseur, 106 N.J. at 322.

We also reject defendant's contention that the State committed prosecutorial misconduct by using a still photograph from The Shining as an illustration of how defendant purposely put Cervantes in fear of immediate bodily injury during summations. In the course of summations, the prosecutor argued that:

> So when you're coming to think of that, I want you to think of the fact that it's his actions, not his words alone, okay? It's not his words alone. It's not the please and the thank you. It's the actions. And I wanted to give, like, a little bit of an illustration. And – and this is the - the - the - the - how his actions are reflected in the video, how close he got to her, and we know how tall he is from when he walked into the - into the - the bank. So, he's clearly making himself right at her level. I wanted to give a little bit of an illustration.

At this point, to illustrate the argument, the prosecutor displayed on a screen visible to the jury a still photograph taken from the movie The Shining, depicting actor Jack Nicholson in his role as Jack Torrance, who becomes violently insane, and attempts to murder his wife and child. THE SHINING (The Producer Circle Company 1980). The photograph depicted a demented Nicholson menacingly peering through a hole in a locked door, behind which his wife retreated to escape him, Nicholson having used an ax to chop open the door. Ibid. The prosecutor continued:

> We've all seen this, right? This movie? And, you know, these words, "Here's Johnny." Right? If you've never seen the movie, The Shining, this is creepy, but not scary, right? You've never seen it. All right. This guy looks creepy and he's saying some very unthreatening words, "Here's Johnny." But if you have ever seen the movie The Shining, you know how his face gets through that door. So, again, I just point that out to illustrate. It's not just the words; it's what you do before and what you do after the words that matters. And that's what makes it a robbery.

Defense counsel objected to the depiction from the movie, pointing out that the face peering through the broken door is preceded by the character using an ax to smash the door, a scenario bearing no relation to the facts presented to the jury. The trial court admitted that the depiction of Jack Nicholson was unexpected. The court sustained the objection and offered to give a curative

17

instruction, but defendant's counsel was reluctant to make any statement about the display to the jury, for fear that it would highlight the photograph and the comments.

Like the trial court, we find that, although unexpected, the State's remarks about The Shining and the presentation of a still from the movie did not rise to the level of impropriety required to find prosecutorial misconduct. Defendant promptly objected to the State's language, and the objection was sustained. See Frost, 158 N.J. at 83. While the remarks were not withdrawn and were not stricken from the record, the trial court offered to give a limiting instruction. See Ibid. However, defendant did not want to emphasize the comments and declined a limiting instruction.

Taken in that context, the State's fleeting comments about The Shining at the end of a multi-day trial with ample witness testimony and documentary evidence to support the conviction, and in recognition of the considerable leeway accorded the State in closing arguments, were not so egregious as to constitute prosecutorial misconduct.

The trial court's imposition of an extended term of imprisonment.

Finally, defendant argues that the trial court abused its discretion by imposing a fourteen-year extended term of imprisonment. Defendant contends

that he "took pains to avoid harming anyone" at the bank where he committed the robbery and that despite his qualification for an extended term, the current offense did not warrant an extended term.

We review an imposition of a sentence for abuse of discretion. See State v. Johnson, 118 N.J. 10, 15 (1990).

> The court may, upon application of the prosecuting attorney, sentence a person who has been convicted of a crime of the first, second or third degree to an extended term of imprisonment if it finds one or more of the grounds specified in subsection a., b., c., or f. of this section.
>
> [N.J.S.A. 2C:44-3.]

One ground for imposition of an extended term is when

> [t]he defendant has been convicted of a crime of the first, second or third degree and is a persistent offender. A persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been previously convicted on at least two separate occasions of two crimes, committed at different times, when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
>
> [N.J.S.A. 2C:44-3(a).]

"In determining the appropriate sentence to impose within the range, judges first must identify any relevant aggravating and mitigating factors set

forth in N.J.S.A. 2C:44–1(a) and (b) that apply to the case. The finding of any factor must be supported by competent, credible evidence in the record." State v. Case, 220 N.J. 49, 64 (2014) (citations omitted).

In this case, the trial court's imposition of an extended sentence was well within the bounds of his discretion. The trial court's finding that defendant is a "persistent offender" pursuant to N.J.S.A. 2C:44-3(a) is amply supported by defendant's extensive criminal history of eleven convictions. These convictions include two third-degree thefts, two second-degree robberies, one third-degree escape, one third-degree unlawful possession of a weapon, and five fourth-degree convictions including joyriding, hindering, criminal mischief and two convictions for aggravated assault.

The trial court's finding that aggravating factors (3) (the risk that the defendant will commit another offense), (6) (the extent of the defendant's prior criminal record and the seriousness of the offenses of which he has been convicted), and (9) (the need for deterring the defendant and others from violating the law) is also abundantly supported by defendant's extensive criminal history and the failure of prior incarcerations to deter him from committing additional offenses. Indeed, defendant committed this robbery after having been released from incarceration only two weeks earlier for another robbery, and

defendant has also had several convictions for violating his probation. We thus discern no abuse of discretion in the court's imposition of an extended term of imprisonment.

To the extent we have not specifically addressed any remaining arguments raised by plaintiff, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION